STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Appellant,

v.

Elmer YACKEL and George Yackel,
Respondents.

No. 8864.

Springfield Court of Appeals.

Missouri.

Aug. 7, 1969.

Robert L. Hyder, Jefferson City, Wil-
liam T. Powers, Jr., Springfield, for appel-
lant.

Dorman L. Steelman, Salem, for respond-
ents.

TITUS, Judge.

As a prelude to improving Route P in Phelps County, plaintiff (the State Highway Commission) acquired from defendants by condemnation 2.39 acres for a new right of way, 0.10 acres for a construction easement, 0.10 acres for a temporary easement to obliterate a portion of the old roadway, and 1.55 acres for borrow purposes. Plaintiff appeals from the $5,000 judgment entered on a jury verdict returned to the Circuit Court of Phelps County in favor of the defendants, and claims it is entitled to a new trial because the court nisi allegedly erred [I] in refusing to strike the testimony of defendants' witness Clyde Hardy, [II] in admitting defendants' pictorial exhibits into evidence, and [III] in overruling plaintiff's objections to a question posed to defendant Elmer Yackel relating to the sale of gravel.

## I.

No objection was made to any of the testimony of Clyde Hardy during the course of his direct and cross examination wherein he opined that defendants' farm had a before condemnation value in "the sixty thousand bracket" and an after value of "[f]orty-five or fifty thousand," or in other words that defendants' damages amounted to "ten, fifteen thousand dollars." After Hardy's testimony was completed, plaintiff moved to strike it because "the witness, by his own testimony, said that he did not consider all of the elements involved in the case, and further testified * * * these opinions [of values and damages were] strictly based on his experience." Contending the trial court erred in refusing to strike Hardy's testimony, plaintiff in its motion for a new trial reasoned the witness "did not consider the borrow area * * * in arriving at the * * * value of the property after the appropriation; did not testify to proper familiarity with the subject property either before or after the taking; and gave opinions * * * not based on factual information or investigation, and presented testimony of such a speculative and nebulous nature that could have only confused the

jury * * * was highly prejudicial to the Plaintiff and gave the jury a roving commission to find a verdict not based on competent evidence." However, unlike any of the reasons given the trial court, plaintiff on appeal argues that Hardy's testimony should have been stricken because he "did not testify to a definite damage figure * * * and * * * the Trial Court's action * * * placed before the jury *confusing and incompetent testimony,* i. e., either damages of $10,000.00 or damages of $15,000.00; one of the two figures was not competent evidence of the facts."

When plaintiff failed to urge on appeal the same reasons for striking Hardy's testimony that it asserted to the trial court, it abandoned those reasons as far as we are concerned [Marshall v. City of Gladstone, Mo., 380 S.W.2d 312, 314(1) ], and because a party in an appellate court is held to the specific objections presented to the trial court and is prohibited on appeal from advancing new and different reasons for its objections, we find ourselves without authority to decide this point upon review. State ex rel. State Highway Commission v. Volz Concrete Materials Company, Mo., 330 S.W.2d 870, 878; Langdon v. Koch, Mo. App., 435 S.W.2d 730, 732(2); Negley B. Calvin, Inc. v. Cornet, Mo.App., 427 S.W.2d 741, 746(6); Wolff v. Richardson, Mo.App., 358 S.W.2d 112, 116(5); V.A.M.R. 79.01 and 79.03.

## II.

The questioned photographs were taken by a professional photographer on the day before trial and, as he testified, represent fair and accurate views of defendants' property, the old highway and bridge and "the new road and bridge while under construction." Plaintiff does not contend the photographs incorrectly show the situation and surroundings they purport to depict, but objected to their reception into evidence because "the view of an uncompleted project * * * would be highly prejudicial to this plaintiff [and] in allowing the jury to view these Exhibits the Court al-

lowed the jury to bring in a verdict based in part on the way the road appeared at the time, rather than when the road was completed." To this point plaintiff cites Fullington v. Southeastern Motor Truck Lines, Mo.App., 254 S.W.2d 246 [251(10) ]. Its relevancy to this case, if any, escapes us.

◼ Admissibility of photographs and the determination of their pertinency and materiality is largely within the discretion of the trial court, and unless that discretion is clearly abused its ruling will not be disturbed on appeal. Dudeck v. Ellis, Mo., 399 S.W.2d 80, 96(16); Chandler v. Gorda, Mo., 384 S.W.2d 523, 528(5, 6); State ex rel. State Highway Commission v. Cone, Mo., 338 S.W.2d 22, 27(13); Brock v. Gulf, Mobile and Ohio Railroad Company, Mo., 270 S.W.2d 827, 833(11). "[T]he fact alone that a photograph of a location or an object was taken before or after an event, and before or after changes have occurred, does not make the photograph inadmissible in evidence if the extent of the changes is explained. * * * When those changes are explained, and 'the photographs reasonably may aid the jury in arriving at an understanding of a fact or facts that have a direct bearing upon the issues,' they are admissible in evidence. * * * These points of differences between what the photograph shows and what is contended to be the actual facts may be made 'the basis for cross-examination, thus enabling the jury to give proper weight to the evidence.'" State ex rel. State Highway Commission v. Eilers, Mo., 406 S.W.2d 567, 571(3–5); 32 C.J.S. Evidence § 715, pp. 1006–1018.

The trial court instructed the jury on the measure of damages and defined "fair market value" as prescribed by MAI 9.02 and MAI 15.01. These charges did not suggest that the jury should allow defendants any damages because of the unmanicured appearance of the new highway during construction—neither did the evidence or argument of counsel. We must assume that the jury as reasonable and intelligent men and women understood and followed the instructions and were governed by the evidence. Lee v. Holland, Mo.App., 258 S.W.2d 30, 34(8). Likewise, it would be unrealistic not to recognize that jurors are endowed with powers of common observation and reasoning and have often seen highways in the throes of construction with envisionary realization they will later emerge as well tended roadways inoffensive to even the most ardent esthete. Consequently, we do not venture to inject into the photographs the dire effects ascribed to them by the plaintiff. Plaintiff's argument that the trial court, by permitting the jury to view the photographs, allowed it to bring in a verdict which included damages for the appearance of the new highway in the course of construction, is a mere assertion unsupported by the record. Cf. Bowers v. Etherton, Mo., 216 S.W.2d 83, 86(2). Since the jury was fully informed the photographs, inter alia, presented pictorial images of the new highway in an unfinished state, and as the pictures appear reasonably calculated to help the jury to a fuller understanding of the quantum and nature of the property acquired, the changes in the routing of the roadway, and other physical features bearing upon the involved issues, we cannot say that the trial court abused its discretion in admitting the photographs into evidence, or that showing them to the jury prejudiced plaintiff to any extent that would warrant the granting of a new trial.

### III.

Defendant Elmer Yackel testified that prior to the taking he had sold gravel off his farm "all the time. * * * Whenever they come up with the truck." It is not entirely clear from the record just where the source of gravel was located, except that defendant said it was on property which belonged to him. Defendant stated that Mill Creek ran through his farm and he got "the biggest part" of the gravel from the river. In any event, defendant's testimony was to the effect that the new road and bridge were either constructed atop his previous gravel source or so situate that he had lost access to it. Mr. Yackel was asked to state

"the amount of dollars worth of gravel per year" that had been sold from his property before it was condemned, and plaintiff objected to the question "on the basis that loss of profits is not germane to a condemnation case; it's not compensable." The objection was overruled and defendant answered, "About five hundred." After defendants rested, plaintiff called the District Chief Designer for District 8 of the Missouri State Highway Department, who testified that according to a copy of a deed which he had but which was not put into evidence, and other hearsay information which was not objected to, defendants' property did not "touch the creek in close proximity to the bridge" where the alleged source of gravel was located.

Plaintiff's last point on appeal is that the trial court erred in overruling plaintiff's objection to the question asking for the amount of dollars' worth of gravel that had been sold from the property before condemnation, "for the reasons that loss of profits or injury to business is not a proper element of damage in a condemnation case; and further, there was uncontradicted testimony that the land from which the gravel was alleged to be taken was not on the land belonging to Mr. Yackel as of record title."

■ To avoid prolixity, we detour all discussion as to whether plaintiff's evidence through the testimony of the designer constituted "uncontradicted" proof that defendants did not own the gravel supply or whether, because of Mr. Yackel's unobjected to testimony concerning title, the issue of ownership was one for jury determination. It is sufficient to note that plaintiff now seeks in part to charge the trial court with error in overruling an objection to a question propounded to Yackel during defendants' case in chief on the basis of testimony which was not introduced until after defendants had rested their case. A trial court will not be convicted of error because evidence was subsequently admitted which would have required a different ruling if it had been before the court when the ruling

was made. Jackson County v. Meyer, Mo., 356 S.W.2d 892, 897(4).

We do not believe it hypertechnical to observe that the question to which plaintiff objected did not call for an answer regarding loss of profits. The question and its answer were the only references made in the trial to the gravel removed, and no effort was expended to make the gravel deposit the subject of a separate evaluation apart from the land where contained and add it to the farm as additional compensation for the taking. As a matter of fact, when asked on cross examinaion to itemize the elements considered in computing the $10,000 damages he claimed, Mr. Yackel said, "I didn't itemize nothing. * * * I'm talking about the farm as a whole." However, when pressed on the subject he noted $2,500 for the new right of way, $5,000 for the borrow area and $1,500 for fencing. He additionally mentioned the construction easement as an item of damage but gave it no dollar figure, and in reference to "the damage at the bridge" (loss of his gravel supply) he characterized these damages as being "on the extreme end," or, as we understand, representing the least item in his considerations.

■ Plaintiff cites Accomac Realty Co. v. City of St. Louis, 347 Mo. 1224, 152 S.W.2d 100; St. Louis Housing Authority v. Bainter, Mo., 297 S.W.2d 529; and St. Louis K. & N. W. R. Co. v. Knapp, Stout & Co. Company, 160 Mo. 396, 61 S.W. 300, in support of the general rule that loss of profits or injury to business are not proper elements of damage in a condemnation case. But in our reading of the entire record we do not find a single allusion in the testimony of any witness that the damages for taking were based in any degree upon defendants' loss of profits or injury to business. Although it could properly be inferred some profit was realized from the sale of the gravel, Mr. Yackel's testimony as to "the amount of dollars worth of gravel" that had been sold off the property each year was not, in our opinion, an attempt to prove loss

of profits or injury to business, but to demonstrate the quantity of the gravel supply that had been available prior to the taking, and therefore it concerned market value. Cf. State ex rel. State Highway Commission v. Ellis, Mo.App., 382 S.W.2d 225, 235. The value of minerals (including gravel) in land taken by eminent domain is properly considered in determining the value of the property. Missouri Edison Company v. Gamm, Mo.App., 379 S.W.2d 166, 172(14). This is not to say, however, that where there is no severance into separate estates of surface and mineral rights, the mineral deposits are to be valued separately and added to the otherwise value of the land. In such instances the quantity and quality of the minerals may be properly considered as they enhance the value of the land and affect the market value of the property. State ex rel. State Highway Commission v. Foeller, Mo., 396 S.W.2d 714, 719(1) ; 29A C.J.S. Eminent Domain § 174 at pp. 735–736. As indicated in the oft cited case of United States v. Land in Dry Bed of Rosamond Lake, Cal., S.D.Cal., 143 F.Supp. 314, 322, even though it is necessary that a clear distinction be drawn between what is considered as factors underlying an opinion as contrasted with an opinion as to the fair market value of the gravel itself apart from the land, defendant was entitled to describe to the jury the gravel on the land, the quantity thereof and the going price therefor, as *factors* upon which he based his opinion as to the fair market value of the farm. Also see 4 Nichols on Eminent Domain, § 13.22—Mineral deposits, pp. 408–419. When evidence is admissible for one purpose but improper for another, it should be received and the opponent, if desired, has a right to an instruction limiting the extent to which and the purpose for which the jury may consider such evidence. Scott v. Missouri Ins. Co., 361 Mo. (banc) 51, 59, 233 S.W.2d 660, 665(9). If plaintiff feared the jury was likely to consider the evidence in an *improper manner*, it should have requested a withdrawal or delimiting instruction from the court. This was not done. We do not deny that a more elucidating question or questions could have been asked to make plain a proper reason for the inquiry. Nevertheless, assuming arguendo the question is susceptible to the interpretation and interpolation asserted by plaintiff, in the circumstances of this case it was not so manifestly and prejudicially erroneous as to demand the granting of a new trial by this court.

The judgment is affirmed.

HOGAN, P. J., and STONE, J., concur.