STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

v.

Charles E. VITT, Jr., et al., Exceptions of Charles E. Vitt, Jr., Respondents.

No. 55562.

Missouri Court of Appeals, Eastern District, Northern Division.

Feb. 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 14, 1990.

Application to Transfer Denied April 17, 1990.

Tracy Hunsaker Gilroy, Asst. Counsel and Rich Tiemeyer, Chief Counsel, Kirkwood, for appellant.

Marion F. Wasinger, Hannibal, for respondents.

HAMILTON, Judge.

This is an appeal in a condemnation case tried to a jury upon the exceptions of both parties. The jury assessed damages for the taking of Respondents' property in the amount of $35,500. The trial court thereafter entered judgment on the verdict. This appeal followed. We affirm.

On May 10, 1987, Appellant, the Missouri Highway and Transportation Commission (hereinafter the Commission), filed suit to condemn certain acreage owned by Respondents Charles E. and Janet K. Vitt (hereinafter the Vitts). The property at issue, located in Monroe County at Paris, Missouri, is situated on the 692 acre farm of the Vitts. The farm, bisected by State Highway 15, is improved with a house, a garage, several barns, a machine shed, and several grain bins. The taking consisted of (1) 3.45 acres of the Vitts' farm parallel to the existing right-of-way for State Highway 15, which acreage the Commission needed for a new and permanent right-of-way; (2) 4.67 acres of borrow; (3) .93 acres of temporary easements.

Commissioners appointed by the Circuit Court awarded damages in the amount of $31,520, which the Commission paid into the trial court. Both parties filed timely exceptions to the Commissioners' award and each requested a jury trial. Following the jury verdict in the amount of $35,500, the trial court entered the judgment and ordered the Commission to pay $3,980 plus $345.56 in interest for a total of $4,325.56.[1]

On appeal, the Commission contends the trial court erred in failing to grant its motion for new trial. Specifically, it alleges error by the trial court (1) in failing to strike two members of the venire who were allegedly partial to the Vitts; (2) in permitting two witnesses to testify as experts on behalf of the Vitts, although their identity was disclosed to the Commission in supplemental interrogatories only four days prior to trial; (3) in striking the qualifications of its expert appraiser because it failed to supplement answers to interrogatories; (4) in admitting certain photographs into evidence without proper foundation; (5) in excluding testimony regarding certain safety standards; (6) in failing to withdraw certain evidence regarding the replacement cost of temporary fencing; and (7) in admitting and refusing to withdraw evidence of an allegedly involuntary sale.

In its first point, the Commission asserts the trial court erred in failing to strike venirepersons Crow and Heitmeyer because each had indicated during voir dire that she would feel partial towards the Vitts.

Ms. Heitmeyer testified she would tend to believe the Vitts because they were property owners. Ms. Crow expressed a similar view when questioned by counsel for the Commission. Later, when asked by the Vitts' attorney whether she could fairly and impartially try the case, Ms. Heitmeyer responded, "Yes." Ms. Crow, upon further questioning by the Commission's counsel, explained her position by stating that in order to give the State a fair and impartial trial, she needed "to hear both sides and ... would then make a decision on which way [she] feel[s] then."

The trial court thereafter overruled the Commission's motion to strike Heitmeyer and Crow for cause. The Commission then exercised peremptory challenges against the two venirepersons.

1. The trial court additionally awarded the Vitts interest at nine percent on the $4,325.56 computed from the date of the verdict, September 13, 1988, to the date the judgment is paid.

■ A trial court is vested with broad discretion in controlling the voir dire examination, and its rulings on challenges will remain undisturbed on appeal unless they clearly and manifestly indicate abuse of discretion. *State ex rel. State Highway and Transp. Comm'n v. Dooley,* 738 S.W.2d 457, 467 (Mo.App.1987). The trial court is in a position superior to an appellate court to determine the qualifications of a potential juror, for its determination involves an assessment of demeanor as well as testimony. *State v. Holt,* 758 S.W.2d 182, 187 (Mo.App.1988).

■ The Commission next contends the trial court erred in permitting John Morgan and Robert Gillian to testify as expert witnesses on behalf of the Vitts although the Vitts failed to disclose to the Commission the identity of these witnesses in supplemental answers to interrogatories until four business days prior to trial.

On March 1, 1988, the Vitts filed answers to the Commission's second set of interrogatories stating they would call Darrell Ridgley as an appraiser at trial. On September 2, 1988, the Vitts filed supplemental answers to these interrogatories that reflected a proof of service date of September 1, 1988. The Commission contends it did not receive these supplemental answers until September 6, 1988, only four business days prior to the commencement of trial on September 12, 1988. Rule 56.01(e)(1)(B) imposes upon a party a duty seasonably to supplement responses to questions that directly address the identity of each person expected to be called as an expert witness at trial and the general nature of the subject matter on which the expert is expected to testify.

On the first day of trial, September 12, 1988, the Commission made an oral motion in limine to exclude Morgan and Gillian as witnesses. Although the trial court overruled the motion, it stated that the Commission's counsel would be afforded "whatever time she feels she needs to talk to these witnesses." When Morgan was called as a witness, counsel for the Commission interposed no objection, stating that the "State's not opposed to this testimony...."

Similarly, she made no objection when Gillian took the witness stand.

■ A motion in limine preserves nothing for review. *Anderson v. Rojanasathit,* 714 S.W.2d 894, 895 (Mo.App.1986). Following denial of a motion in limine, a party must object at trial to preserve for appellate review the point at issue. *Id.* Point denied.

■ In its third point, the Commission asserts error by the trial court in striking testimony regarding the qualifications of the Commission's expert appraiser. On April 24, 1987, in response to Interrogatory number 7 of the Vitts' first set of interrogatories, the Commission listed Ray Otto as its expert appraiser and furnished his qualifications. On March 30, 1988, the Commission supplemented its response to Interrogatory number 7 by identifying a new expert appraiser, David Barnes. Barnes' qualifications were not included in the supplemental response.

The attorney for the Vitts deposed David Barnes on August 23, 1988. During the deposition, Barnes disclosed his qualifications in response to questions from the Vitts' attorney.

At trial, the Commission's attorney questioned Barnes about his qualifications. During this interrogation, the Vitts' attorney asked the trial court to strike the previous trial testimony regarding Barnes' qualifications because the Commission failed adequately to supplement its response to Interrogatory number 7. The trial court then struck Barnes' trial testimony as to his qualifications. Thereafter, the Vitts' attorney agreed to let Barnes testify as an expert appraiser, but not as an agronomist. Barnes then testified as an appraiser. The Commission made no offer of proof regarding what Barnes would have testified to as an agronomist.

Interrogatory number 7 specifically requested disclosure of the identity and qualifications of any expert the Commission planned to call. Initially, the Commission answered this interrogatory fully with respect to Ray Otto. Its supplemental response, however, while identifying Barnes,

failed to disclose his qualifications. That omission violated the provisions of Rule 56.01(e)(1) and (2).

■ A trial court has broad discretion with respect to evidence challenged during trial on the basis that it was undisclosed in answers to interrogatories. *Manahan v. Watson,* 655 S.W.2d 807, 808 (Mo.App. 1983). In the sound exercise of its discretion, it may admit or exclude such evidence, or determine and impose appropriate sanctions for violations of rules governing interrogatories. *Id.* We find no abuse of discretion.

■ The Commission next contends the trial court erred in admitting into evidence two photographs of the construction site with no explanation of the property's appearance following completion of construction.

■ The admission of photographs, being within the discretion of the trial court, will not be disturbed on appeal absent an abuse of that discretion. *Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 269 (Mo.App.1988). That a photograph of a location was taken before or after an event and before or after changes occurred does not render it inadmissible if the extent of the changes is explained. *State ex rel. State Highway Comm'n v. Eilers,* 406 S.W.2d 567, 571 (Mo.1966). In *State ex rel. State Highway Comm'n v. Yackel,* 445 S.W.2d 389 (Mo.App.1969), photographs of property involved in a condemnation proceeding that showed a highway under construction, not yet completed, were held admissible. In reaching this result, the appellate court noted that "it would be unrealistic not to recognize that jurors are endowed with powers of common observation and reasoning and have often seen highways in the throes of construction with envisionary realization they will later emerge as well tended roadways inoffensive to even the most ardent esthete." *Id.* at 391.

The photographs at issue here were identified by the Commission's employee James O'Bryan as fairly and accurately portraying the condition of the Vitts' land as he observed it on the morning of trial. Further, the jury was informed through the objections voiced by the Commission's counsel and by an exchange in its presence between that counsel and the trial judge, which made clear that the highway construction was presently incomplete. Moreover, counsel for the Commission had the opportunity to explore the points of difference between what the photographs showed and what the actual facts might be. *Id.* Therefore, we find no abuse of discretion by the trial court in admitting the photographs into evidence. Point denied.

■ In its fifth point, the Commission contends the trial court erred in failing to apply the doctrine of curative admissibility[2] when it prohibited James O'Bryan from testifying about safety standards that determine placement of highway entrances. Through this testimony the Commission sought to respond to Mr. Vitt's testimony regarding the placement of the entranceway on his property.

With no objection by the Commission, Mr. Vitt had testified to the difficulties and hazards resulting from the placement by the Commission of the entranceway to Highway 15 on his property. During presentation of the Commission's case, the Vitts' attorney successfully objected when counsel for the Commission asked James O'Bryan why the commission placed the entranceway where it did. The Commission's counsel neither made an offer of proof nor raised the doctrine of curative admissibility.

■ Appellate courts normally will refuse to review the exclusion of evidence without a definite and specific offer of proof. *Huelster v. St. Anthony's Medical Center,* 755 S.W.2d 16, 17 (Mo.App.1988). Thus, in the instant case, absent an offer of

---

**2.** The doctrine of curative admissibility permits a party to reply to inadmissible evidence introduced by the opposing party with similar evidence if the introduction of such evidence is necessary to remove an unfair prejudice brought about by the admission of the earlier inadmissible evidence. *Gevermuehle v. Geimer,* 619 S.W.2d 320, 322 (Mo.App.1981). Its admissibility rests in the discretion of the trial court. *Id.*

proof, we are unable to determine whether the excluded testimony should have been admitted pursuant to either the doctrine of curative admissibility or any other theory. Having no record to review on this point, we cannot assign error to the trial court.

■ The Commission next asserts that the trial court erred in failing to withdraw the Vitts' evidence as to the cost of replacing a fence when, according to the Commission, the fence had been "rolled back" prior to the taking.

John Morgan, the Vitts' witness, testified regarding the cost of replacing all fencing taken from the Vitts as a result of the condemnation. Mr. Vitt admitted upon cross-examination that part of this fencing was temporary and had been "rolled back" before construction of the highway began. The evidence is disputed as to how much or what part of the fence was rolled back. The jury was thus presented with a factual question regarding how much fence was taken and how much the Vitts were damaged, if at all, by the taking.

■ The purpose of a withdrawal instruction, which is given at the trial court's discretion, is to avoid confusing the jury with a false issue. *State ex rel. State Highway and Transp. Comm'n v. Meramec Valley Elevator, Inc.*, 764 S.W.2d 507, 508 (Mo.App.1989). In reviewing the record before us, we cannot say the trial court erred in refusing to give such an instruction.

■ In its final point, the Commission contends the trial court erred in admitting evidence of a sale of land by the McWards to the Commission because this sale was made under threat of condemnation.

■ At trial, Mr. Vitt testified that the value of his land immediately before taking was $522,000 and the value after taking was $436,200, resulting in total damages to the property of $85,800. He further testi-

fied he knew that the McWard property on Highway 15 south of Paris, Missouri, which was property "just like" his was sold to the Commission for $3000 an acre.[3]

Counsel for the Commission moved for a mistrial on the grounds that the McWard property had been the subject of a condemnation case and evidence as to the sale price was prejudicial to the Commission because that price was not the product of a voluntary sale. The trial court overruled the motion for mistrial and an objection to the line of questions relating to the McWard sale.

At the close of the Commission's case, Terry Sampson, negotiator for the Commission, testified the McWards had accepted the initial offer the Commission made to them. When counsel for the Commission attempted to ask Sampson what would have happened had the McWards failed to accept the Commission's offer, the trial court sustained opposing counsel's objection. The Commission's counsel thereafter attempted to make a brief narrative offer of proof. She did not, however, recall Sampson to the stand to propound questions to him.

■ The sale price of property similarly situated to that involved in a condemnation proceeding is admissible to aid the jury in determining the compensation to which the landowner is entitled for the taking of his property. *State ex rel. State Highway Comm'n v. Bruening*, 326 S.W.2d 305, 312–13 (Mo.1959). The party seeking to introduce evidence of such a sale has the burden, however, to show that the sale was voluntary. *Board of Pub. Bldgs. v. GMT Corp.*, 580 S.W.2d 519, 523 (Mo.App.1979). This burden is discharged prima facie by the aid of a presumption that the price of land sold was in fact fixed freely and not under compulsion. *Id.* Thus, the burden of coming forward with evidence to demonstrate that a particular

---

**3.** We note that the Vitt testimony concerning the sale price of the McWard property is apparently hearsay. A witness cannot testify to the price of land when he lacked personal knowledge of the sale. *State ex rel. State Highway Comm'n v. Cady*, 372 S.W.2d 639, 640 (Mo.App.

1963). Counsel for the Commission, however, failed to object to this testimony as hearsay. Hence, we cannot review on that ground. *Federal Deposit Ins. Corp. v. Crismon*, 513 S.W.2d 305, 307 (Mo.1974).

sale was involuntary shifts to the opposing party. *Id.* at 523–24.

The Commission relies upon a line of cases indicating that evidence of sales of other property to the condemner is inadmissible as evidence of the value of the land condemned. *See e.g., Shoemake v. Murphy,* 445 S.W.2d 332, 334 (Mo.1969); *State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders,* 350 S.W.2d 771, 772 (Mo.1961); *Bruening,* 326 S.W.2d at 313; *Metropolitan State Ry. Co. v. Walsh,* 197 Mo. 392, 405; 94 S.W. 860, 864 (1906). In *Walsh,* the Supreme Court justified this rule of exclusion because

> [s]uch sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such price as may be fixed by the tribunal appointed by law.... The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property.

94 S.W. at 864.

The Supreme Court qualified *Walsh* in *Bruening* by observing that the exclusionary rule articulated in *Walsh* has not been "inflexibly applied." 326 S.W.2d at 313. Subsequently, in *GMT Corp.,* this Court held that this "exclusionary rule becomes applicable when the evidence demonstrates that the condemning authority has a fixed purpose to institute condemnation proceedings if it cannot acquire the land by purchase at a satisfactory price, or that the condemnor threatened the seller with condemnation if a satisfactory purchase price was not agreed upon." 580 S.W.2d at 524.

In the present case, the Commission failed to prove either of the foregoing. It offered no evidence that, prior to its purchase of the McWard's property, it had a fixed purpose to begin a condemnation proceeding against the McWards. Nor did the Commission present evidence that it threatened the McWards with condemnation if no

agreement were reached on a satisfactory purchase price for the property. The record before us reflects only that the Commission made an offer that the McWards accepted. What would have occurred had the McWards not accepted this initial offer is speculation. In the absence of evidence that the McWard sale occurred under threat of condemnation, we find no error by the trial court. Point denied.

The judgment of the trial court is affirmed.

SIMON, C.J., and CRANDALL, J., concur.